The People of the State of Illinois, Plaintiff-Appellee, *v.* Eddie Jackson, Defendant-Appellant.

(No. 70-163;

Third District—January 20, 1972.

STOUDER, J., dissenting.

John L. Barton, of Ottawa, for appellant.

Arthur Lennon, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Eddie Jackson, was indicted for armed robbery, was found guilty by the trial judge, and was given a sentence of five to ten years.

The defendant has appealed, contending that he was not proved guilty beyond a reasonable doubt and that his sentence was excessive and improper. It is his position that the identification procedure was unnecessarily suggestive, that his alibi testimony should not have been discounted, and that the minimum sentence should not be more than one-third of the maximum.

The armed robbery from which this case developed took place at 11:30 P.M. on February 13, 1969. The victim was about to close the gasoline station where he was working when three Negroes came through the door. The victim turned and looked at the first man as he took a couple of steps toward the victim and then struck him with a club. The victim was then shoved into the bathroom and forced to lie face down on the floor, and he did not see the men again before their departure.

The next night the victim went to the police station, gave a description of his assailant and the club that had been used, and looked through more than a hundred photographs. He failed, however, to identify that of the defendant. It showed the defendant with short hair, and the victim's impression of his assailant's hair was that it was long, straightened, and greasy in appearance.

Ten nights later a police detective called on the victim at the gas station, showed him a nightstick, and asked if it were similar to the one used in the robbery. The victim answered that it was. The detective then went back to the police station, took black-and-white photographs of the defendant and another Negro, both of whom were in custody, and returned with these two photographs and photographs of two other persons.

When the victim was shown the snapshot of the defendant, he said that he believed this was the man who robbed him, but couldn't be positive from the black-and-white photograph and thought that in a color photograph the man's complexion would show up better. The detective then went back to the station, took another photograph of the defendant using colored film, and returned to the victim with the color photograph.

The victim said that that was the man, and he would like to view him in person.

Five days later a lineup was held. The victim promptly identified the defendant in a group of five persons. The defendant was represented by counsel.

At the trial the victim identified the defendant again. Other evidence against the defendant was the nightstick which the police had recovered from the defendant's apartment. The victim said it was similar to the one used in the robbery, and that the assailant had swung it with his left hand. The defendant admitted that he was left-handed.

The defendant and four other witnesses testified that on the night of the robbery he was in the living room of his father's trailer house from 8 P.M. until 1:30 A.M. The other witnesses were the defendant's wife, his mother, his stepfather, and an acquaintance.

The trial judge, after commenting on the evidence of guilt and the identification procedure and stating his belief that the identification was cautious, proper, and correct, found the defendant guilty as charged.

■■ Recently, in *People v. Brown* (Ill.App. 1971), 267 N.E.2d 142, this court held that initial identification from photographs and subsequent line-up identification did not constitute impermissibly suggestive procedure. We believe the reasoning of that case and cases cited therein to be applicable here. We do not consider photographic identification to be proscribed by *Simmons v. United States,* 390 U.S. 377, and do not find error in the identification procedure followed in the present case.

■■ It is our opinion (as noted in *People v. Brown, supra*) that there was no reversible error herein by reason of the alibi testimony presented. It was for the trial judge to determine the weight to be given this evidence, and the testimony of a single witness may be sufficient to convict although contradicted by alibi witnesses. (*People v. Bracey,* 129 Ill.App. 2d 57.) Furthermore, rather substantial errors in height and weight estimates originally given to police have been held not to affect the credibility of an eye-witness identification. (*People v. Calhoun* (Ill.App. 1971), 270 N.E.2d 450. We conclude that the trial judge was justified in finding the defendant guilty beyond a reasonable doubt.

■■ As to the sentence imposed, we would also affirm. In imposing sentence the trial court has an obligation to the public as well as to the person found guilty of a crime. Thus in sentencing, the court must consider the punishment warranted under the circumstances of the particular case, the protection of the public, and the potential for rehabilitation of the party being sentenced. The circumstances of the case include the nature of the offense, the attending circumstances, the character and

propensities of rehabilitation, and all other pertinent matters. *People v. Buell*, 120 Ill.App.2d 367.

At the hearing in aggravation and mitigation, the trial court had before it a rather complete resumé and history of the defendant and we believe properly applied the standards set forth in *People v. Buell*.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER dissenting:

I do not agree with the majority of the court. I believe that the extra-judicial identification process considered as a whole was unduly suggestive, irreparably prejudicial and not warranted by any practical imperative.

I believe that the rules laid down in *Simmons v. United States*, 390 U.S. 377, 88 Supreme Court 967, 19 L.Ed.2d 1247, are applicable and have been reaffirmed by the Illinois Supreme Court in *People v. Holiday*, 47 Ill.2d 300, 256 N.E.2d 634. (See also, Colo. Law Rev. 135 "In the Wake of Wade: The Dimensions of the Eyewitness Identification Cases" by Joseph R. Quinn.) In *Simmons, supra,* the U.S. Supreme Court said, "* * * we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." In apply this standard to the facts in the *Simmons* case, *supra,* the court concluded among other things, that the defendants were not in custody at the time the photographs in question were shown to the witnesses and the circumstances of the case showed there was little chance for misidentification because the robbery took place in the afternoon in a well lighted bank, five bank employees had been able to see the robber, later identified as Simmons, for periods ranging up to five minutes and the witnesses were shown the photographs from which they made their identification only one day after the robbery. Under these facts and circumstances the court held that there was not a substantial likelihood for misidentification. The aforesaid standard was approved by the Illinois Supreme Court in the *Holiday* case, *supra.* In this case the court held that the photographic identification procedure ought not to be employed when the suspect is in custody and a lineup is otherwise feasible. In reversing the conviction the Illinois Supreme Court found that the opportunity to observe the defendant was limited

due to poor lighting and only a quick glance on the part of the witness. They further concluded that the defendant's three alibi witnesses were virtually unimpeached. The court held, "Defendant must be afforded a new trial if the testimony of either witness is found to have been inadmissible, since the erroneous admission of either witness's testimony must be deemed prejudicial when the only evidence against defendant was their identification testimony, and defendant presented an otherwise substantially unimpeached alibi based upon three witnesses."

So far as burden and the degree of proof required in a photographic identification case is concerned I rely on *U.S. v. Zeiler* (1970), 427 Fed.2d 1305, 3rd Circuit Court of Appeals, which quotes with approval, the rule enunciated in *U.S. v. Wade*, 388 U.S. 218, 18 L. Ed.2d 1149, 87 Supreme Court 1926, which places the burden on the government to prove by clear and convincing evidence that the witnesses were not influenced by prior improper photographic confrontations. In the case at bar, a gasoline station robbery took place late at night. There was no testimony concerning the lighting conditions which existed at that time. The victim had only a few seconds, at most, to observe his attacker before he was struck with a club and incapacitated. The next night the victim observed more than one hundred photographs, one of which was that of the defendant, but was unable to make an identification. Ten nights later a police detective showed the victim a club and in response to questions the victim stated that the club was similar to the one used upon him. Meanwhile the defendant and another person were taken into custody. The detective subsequently took new black and white photographs of the two men in custody and took these with mug shots of two other men to the victim. The victim upon observing these photographs stated he believed the defendant was the man who robbed him but could not be sure from the black and white photographs. The detective then went back to the station and took a color photograph of the defendant. He returned with the color photograph to the victim who stated, "this to my belief is the person who robbed me but I would like to view him in person." A line up was subsequently held and at that time the victim identified the defendant as the man who robbed him. At the trial the defendant and four other witnesses, two who were employees of the Illinois Youth Commission, offered unimpeached testimony that the defendant had never left the living room of his father's trailer home during the hours in which the robbery took place. The club shown to the victim was found in the defendant's apartment and his wife seemed to satisfactorily explain its presence there. It was evidently one of a military variety. In any case the victim could only state that it seemed similar.

I do not believe this conviction should stand in light of the standards set forth in *Simmons, supra* and *Holiday, supra*. Subsequent to the initial photographic identification procedure in which no identification was made and prior to the second photographic identification the defendant was taken into custody. Thereafter, it is clear that a line up should have been held immediately in lieu of a second or third photographic identification procedure. There was little opportunity for the victim to have observed his attacker and the State presented no evidence that there was enough light available to make an ample observation even if the victim would have had a longer opportunity to observe. There was no corroborative evidence. There was at least an eleven day time lapse between the date of the crime and the date that the final photographic identification was made. By showing the victim the two black and white photographs along with the two mug shots and finally the color photograph by itself it seems likely that the victim knew that the two men in the black and white photographs and finally the one man in the color photograph were in custody and the police suspected one or both of them of being guilty of the crime. It certainly was a procedure which was unfair and unduly prejudicial to the defendant.

In light of the testimony, the military club offered into evidence by the State had little probative value and finally the unimpeached alibi testimony of four witnesses in addition to the defendant, certainly must be given the strongest judicial consideration when weighed against the uncorroborated identification based on an improper photographic identification procedure. The majority relies heavily on *People v. Brown* (1971), (Ill.App.2d), 267 N.E.2d 142 (Petition for Leave to Appeal granted). When this court decided the *Brown* case the decision in the *Holiday* case, *supra*, had not as yet be published and we were unaware of its existence. I believe that if this court had considered the *Holiday* case while it was considering the *Brown* case there would have been a different result in *Brown*. Further the majority opinion in *Brown* states, "an alibi is an affirmative defense and where the *corpus delecti* is proved, together with the evidence tending to show the guilt of the defendant, the burden of establishing the alibi rests upon him although upon the whole case his guilt must be proved beyond a reasonable doubt." An alibi is not and should not be treated as an affirmative defense. The suggestion that the defendant labors under some kind of burden with reference to an alibi is both misleading and prejudicial. (*Johnson v. Bennett,* 393 U.S. 253, 21 L.Ed.2d 415, 89 S.Ct. 436.) Therefore I would reverse the conviction in this case.